So next case for argument is Debartolo v. United States. Mr. Bratton. Thank you. May I reserve two minutes for rebuttal? I'm Scott Bratton. I represent the defendant petitioner in this case, Renato Debartolo. The present case involves a district court's denial of Mr. Debartolo's 2255 motion filed pursuant to Padilla v. Kentucky. The sole issue in this case is whether Mr. Debartolo established prejudice as a result of his lawyer's failure to advise him that the plea in this case would result in mandatory deportation. In fact, the plea in this case resulted in the commencement of deportation proceedings and since the filing of the appeal in this court, Mr. Debartolo has been deported from the United States. Mr. Debartolo contends that the district court erroneously denied his 2255 motion. Throughout the proceedings, there's been a lot of discussion and argument over the proper legal standard for prejudice determination with respect to Padilla claims. Under Hill, a defendant can establish prejudice on an ineffective assistance of counsel claim involving a plea if the defendant convinces the court that the plea would have been, or it would not have ended, he would have rejected the plea and proceeded to trial and that there's a reasonable probability that he would do so. We would submit that with respect to a Padilla claim, as the Supreme Court stated, the defendant must convince the court that the decision to reject the plea bargain would have been rational under the circumstances. And we're not arguing that this is a new test. We're arguing that this is what has to be established in order to show prejudice for purposes of a Padilla case. Why? Why is there a different standard? I'm not sure it's a different standard. It's a different risk analysis, but I'm not sure that there's a different standard. Well, why are you arguing so hard for it then? Well, I think mainly because the district court found that what we were arguing was incorrect and we were arguing under an incorrect standard that the reasonable under the circumstances test was not the proper standard in this particular case. Right, the only reason to fight over the standard is that it makes a difference in the outcome. So if... It makes a difference in the risk analysis. You don't think it makes a difference. If you think you win under reasonable probability, that's what the cases say, a Strickland claim requires. So I don't know why there should be any different standard in the Padilla context. And that we should break new ground in this circuit, in this case, if it doesn't make any difference. No, I think that the argument is that the risk analysis is different. You don't focus solely on trial outcome. It's a standard where you look at the totality of the circumstances. In the courts, in the cases that both sides have cited, the Sixth Circuit case in Mayo, the Fifth in Coyote, the Third in Orocio, and the Eleventh in Gutierrez and Hernandez, those cases all state that it has to be rational under the circumstances. They look to, in order to prevail on a Padilla claim and a 2255... Well, do you think he would have been acquitted if he'd gone to trial? Well, we've conceded throughout the proceedings that the evidence is strong against Mr. De Bartolo. So the likelihood of acquittal is admittedly small in this particular case. Well, how would he have benefited then from going to trial? Well, it's a situation where he was facing certain deportation from a country where he's lived his entire life since he's one year old. He came in 1968. In that particular situation, as the Supreme Court's recognized in St. Cyr and Padilla, oftentimes the potential of deportation is the most significant factor in determining whether to proceed to trial or not. What would he have done? Do you envisage him being acquitted, or do you think if he'd known he was going to be deported upon conviction that he would have made a deal with the Justice Department, or what? Well, at this point, there's no evidence that the Justice Department would have given him a deal other than this particular deal that he got in this case. So I'm not certain whether that would have been possible or not, but as he stated in his affidavit and at the evidentiary hearing, he would have proceeded to trial had he known that this plea would have resulted in deportation. But how could he have been acquitted, though? I mean, it's admittedly difficult for him to be acquitted based on the evidence in the case, but as the Supreme Court stated, a lot of times the defendant will be willing to risk a longer sentence in the face of the chances at trial, rather than face banishment from the only country that they know. And in this particular case, that's our position, that Mr. DeBartolo has been in the United States, was in the United States since 1968, as a lawful permanent resident. His entire family is in the United States. As the District Court judge recognized, he had everything to lose if he was deported, and the only tie he had to Italy was his citizenship. And the District Court judge also recognized that it would not have been irrational for Mr. DeBartolo to reject the plea and go to trial. We would submit that, looking at the totality of the circumstances, which all the cases have done after the Padilla decision, that in this particular case, there's a reasonable probability that he would have proceeded to trial and rejected the plea bargain, in light of the fact that he has had no ties to Italy. So what you're saying is, a person has a right to demand a trial, even if he's clearly guilty, and he couldn't really decide this without knowing about the risk of deportation. Well, I mean, as far as the clearly guilty part, we would concede that the evidence is strong against him, as the District Court judge recognized. The District Court judge also didn't say the evidence was insurmountable. He said that the evidence was strong against him, and the chances of acquittal were minimal. But in this particular case, you're looking at a defendant that had everything to lose, as the District Court recognized, by getting to deport it to Italy. He had everything in the United States. He's been here forever. He's not able to come back to the United States. Well, right, but taking the case to trial would have risked a significantly longer term of imprisonment. Right? What's the difference without the acceptance of responsibility, and the other concessions that the state threw in? With the enhancement, if it was filed by the United States, the minimum sentence would have been 10 years, versus the 25 months he got. Now, after the 25 months, he served a long period of custody due to his immigration case. He served another roughly 10 months or so of custody after that. Right, so it's a difference between two years and 10 years. Correct. That is correct. 10-year minimum. So you're arguing that it would have been reasonably probable that he would have taken the case to trial, knowing that he would serve a minimum of 10 years, as opposed to the two years the government was offering. Yes, and Mr. De Portolo acknowledged that... Plus certain deportation in either scenario. If he was convicted, and as Mr. De Bartolo states at the evidentiary hearing, he realizes that he's facing a long, mandatory minimum sentence if he's deported. However, he was willing to push forward and hopes... With no defense in the face of conclusive evidence of guilt. Well, you're just saying he would do it, however crazy, right? Well, he would do it in light of the other factors in the case. I'm looking at the totality of circumstances. And take the 10 years instead of the two, plus certain deportation. How is that reasonably probable? And hopes that he would be... That the jury would nullify? No, that hopes that he would be acquitted, that he could poke holes in some way. The jury would have to nullify in the face of this evidence. Right, we would admit the evidence is strong. And you'd have to advise him of that in the exercise of your professional obligations, that he's trading a 10-year sentence for a two-year sentence with certain deportation in either circumstance. Or he's... He acknowledges... I mean, we've acknowledged the strength of the evidence in the case. The district court judge didn't state the evidence is insurmountable. The district court judge said... Okay, we're not bound by that. No, I understand. I understand that. You know, we can read the case differently. And I mean, to take a case like this to trial, frankly, isn't rational. When someone's facing... If you want that standard applied, which is a lower standard than reasonably probable. But when facing certain deportation... He's facing certain deportation in either situation. It's just a matter of whether he's going to be deported after a two-year prison term or a 10-year prison term. That's the choice he was facing, if he had been adequately advised of the deportation consequences. But he states he would have, you know, rolled the dice to see what would happen at trial. I mean, you don't have to accept that. Well, of course, a lot can change in those extra years, right? Yeah, that's correct as well. And as I believe the district court judge recognized the fact that he's in the United States, he's closer for family to visit. Now he's overseas where it's virtually impossible for his family to visit him. So we would submit that the district court erroneously denied the 2255 motion. Okay, thank you, Mr. Haller. Thank you, good morning, Your Honors, and may it please the court, David Haller on behalf of the United States, the district... Is it ever possible to say to a criminal defendant, you have no defense. So we're not going to let you have a trial. It is not, Your Honor. Right. Well, isn't that what's involved here? He wants to have a trial. That's for whatever reason. Maybe he's crazy, right? But he wants to have a trial. He says now that he wants to have a trial. So why not give him the trial? Well, we don't believe that's the legal standard. He pleaded guilty under misapprehension of what would happen to him. And he thought that he'd face a prison sentence. He didn't know he'd be deported. We believe, Your Honor, that if that is the standard, is it possible? And I think the district court believed that as well. If the standard is, is it possible that he might have gone to trial, then he should prevail. But the district court believed that the Hill standard was the one that prevailed. What do you mean if it's possible? Well, if there is some possibility, if there is any possibility... No, no, that was my first question. You can demand a trial even if the probability of your being found guilty is a hundred percent, right? Right. And that's the... Well, isn't that his situation? That is, he wants to, you know... I don't know why exactly. He may feel that, you know, our immigration policies are in flux and if he's in the United States, even if he's in prison, he'll have a better shot at eventually being allowed to stay here, change circumstances or something. So, as I say, isn't anybody accused of crime entitled to a trial, even if he's clearly guilty? The defendant... I mean, we don't have, you know, a summary of judgment in criminal cases. As we view it, Judge Posner, the question in this case is, does a defendant who states a Padilla claim on cause automatically entitled to a new trial? That is the legal question in this case, and that is the way the district court framed it. But, you see, he was misled. So, when he decided to plead guilty, he didn't know that this was going to result in deportation. So, if you plead guilty under a misapprehension, should that forfeit your right to a trial? Under Hill, the answer is sometimes. The answer under Hill is, if you pled guilty and cause has been established under Strickland, you only get a trial, which is what you demand, if there is a reasonable probability that you would not have pled guilty and you would have demanded a trial. That is the standard. Oh, I think it's quite a reasonable probability that he would not have plead guilty. Well, the district court, looking at the factors in this case, disagreed with that conclusion. Well, it's not the factors, it's DiBartolo's, you know, what he wants, his personality. Was there some evaluation? Not whether it would be sensible for DiBartolo to have a trial, but whether he really wants the trial. Right. Well, I think the court did evaluate Mr. DiBartolo's credibility. I think that's in its order. They don't think he wants a trial? I think it's very easy for a defendant, after the fact, now to come back in and say, I'm going to take the risk, I'm going to come forward because I can raise the claim now. And then, when he comes back, for us to say, well, you know, you put the pedal to the metal, but we're still sticking to it, and here we are. I mean, his view is, it's two years later, the government's destroyed some of the evidence, and he wants to now take that risk. He wants to fight up and gum the system. But the district court has to decide, under the test, I mean, Strickland rejected the standard that you're advocating for, Judge Posner. Strickland reviewed the possibility of saying, the court just has to show that it conceivably could have influenced the outcome, that this might be what he wants. So, that's the legal standard. That might be what he wants. Suppose it's a certainty that if he had been told about the deportation, he would have demanded a trial rather than plead guilty. Suppose that were known with certainty. Then, under the Hill standard, he would have far surpassed the reasonable probability bar, and he would prevail. He would be entitled to come back and have a trial. Well, how do we know that it isn't a certainty that he would have insisted on a trial? The district court looked at the same factors that every other court to consider these types of claims has looked at. You look at the costs that they would have incurred. You look at the chance that they might have prevailed at trial. You look at, had they not prevailed at trial, what additional penalties they would have incurred. You look at the cost they will suffer. So, did the judge make a finding that, as a matter of fact, Di Bartolo, had he been told about the deportation consequence, would still have pleaded guilty. Is that what the judge found? No, the judge found that he found that, without denigrating Di Bartolo's love for his family or his life here, it is most improbable that, fully informed of his deportation, he would have chosen trial. That is what the district court found. So, the district court found that it was most improbable. There was some possibility. There was some chance that he might have, but that it was most improbable. It was not a reasonable probability. He, having heard Di Bartolo testify... If it was a reasonable probability of his not pleading guilty, then he would be entitled to trial. We do agree with that, yes, Your Honor. And we gave him, we waived any potential procedural obstacles. I believe, as long as there's a possibility the defendant is entitled to an evidentiary hearing, we gave him that hearing. He had every opportunity... Let me ask you another question. I don't, I don't see any difference between someone who immigrates to the United States at the age of one and is born in the United States. What is the base, what is the rational basis for treating those two people differently? Your Honor, the immigration laws in this country have long established a difference in terms of being... Yeah, just tell me what the rational basis for that is. The defendant here could have, at any point in his life, sought to become a citizen. From his, I believe, when he had been here for ten years on, he chose not to do that, and that voluntary decision on his part is what has put him here. So, I believe that's a rational distinction between the two. It may not be the best distinction, but it is one. Do we have any idea why he didn't want to become a citizen? I don't believe so. There might be something in the pre-sentence report. At a certain point in time, Your Honor, when he was in 1994, so when he was 26, he did sustain his first drug conviction. At that point, he would have, under the immigration laws at the time, I believe he would have been ineligible because of that, but why he didn't choose to do it prior to age 26, I have no idea. There's nothing in the record that suggests to me that he could not have done that. Did his parents? He came with his parents, didn't he? Yes, he came over on a familial relation visa. I believe his aunt or some relative was here. According to his testimony, every member of his family, except for he, became a citizen, and he did not. He made that decision. He chose to do that. For whatever reason, he is in a different posture, and under the laws of this nation, he is subject to deportation, and that's a consequence that nobody was aware of at the time of trial, or at the time of his initial guilty plea, and you know, that's unfortunate, and it's unconscionable, and it's a mistake on behalf of the United States, and on behalf of his defense counsel. When he pled guilty, they knew he was not a citizen, though, right? Yes, I certainly, he made that statement, I believe, at the initial appearance, and he made it at the, and it was in the pre-sentence report, so I, I don't know that it was, I mean, it was not discussed at the change of plea hearing. I don't believe even his citizenship was discussed. It required informing of the consequences as well, apart from the duty of his own defense counsel, right? The requirement that you're referring to, as far as the Padilla requirement, was only put into the Federal Rules of Criminal Procedure in, I believe, 2012. Oh, after this. And this was in 2011. We're in kind of that transition time when everyone's adjusting to Padilla, unfortunately. It did apply to this case. There's no doubt. It should have been on everybody's radar screen. It wasn't. But the standards for that, and we've conceded cause. I mean, this is, this is cause. I don't, you know, and, and there's no doubt that that prong of the, of the Strickland's tool is met, but he has to establish prejudice, and that's what both sides here are, are arguing about. And, and, and I think the district court got it right. If the standard is, the standard that, that, that you talked about, Judge Wisner, if it is a possibility, he meets that standard. He did meet that standard. If the standard is a reasonable probability, for all the reasons Judge Sykes discussed earlier, and that we have discussed, he, he does not meet it. He has no defense. He has, he has not demonstrated that there is any chance the government wouldn't, would have dropped the charges. He has not made any demonstration that he could have prevailed at trial. He did not even raise the arguments that you are making, that perhaps he could have offered to persuade the district court. Why did the government bother to prosecute him for this, for this marijuana stuff? Why did, why was he prosecuted for, for theft of the $21,000 worth of electricity? Why was he, he was prosecuted for both, Your Honor. Right. He was prosecuted. That's the real crime. Well, he got just as much time, he got the same amount of time on both offenses, and they were served concurrently. He also is deportable based on theft of more than $10,000 of, of funds as well. But it wouldn't be automatic deportation, would it? With the prior drug conviction? I believe that under Nijuan, I would have to go back and, with Nijuan versus Holder, I, I, I think it is automatic. There are, I believe, certain extenuating circumstances, but I'm not the immigration lawyer. My colleague might know the answer to that better. But he has, he has, even if this conviction were to be reversed entirely, he does have other difficulties in secure, in, in avoiding deportation, or at this point, securing readmission at this point. But we believe the district court got it right, Your Honors, and we would ask that the court affirm the denial of the 2255. Okay, thank you, Mr. Howland. Mr. Bratton, anything further? Just a couple of quick points. As the court's aware that Mr. DeBartolo does have other convictions, however, those convictions were not charged in the notice to appear. So DHS didn't seek to remove him on any other charges other than the conviction. In this particular case, we would submit that this case is consistent with, or our position in this case is consistent with the Orocio case out of the Third Circuit. Trial outcome is not the only determination that the court should look at. The court should look at the totality of the circumstances, and in looking at the length of time and the ties that Mr. DeBartolo had in the United States, we submit that it would have been reasonable for him to reject the plea and proceed to trial. As the Supreme Court's recognized over and over again, deportation is an integral and sometimes the most important factor in the mind of a defendant in determining whether to enter a plea when he's facing mandatory deportation. And that's why the St. Cyr decision came out, and that's why the Padilla decision came out, to make sure that a defendant's aware of this information prior to entering a plea. Mr. DeBartolo was not, and we would submit that he has established that he was prejudiced by his attorney's failure to advise him of the mandatory nature of deportation. Is there any evidence about why he never became a citizen? There's nothing in the record about that. His parents had passed away. If they had become citizens while he was under a certain age, 18, he would have automatically become a citizen of the United States. But there's nothing in the record. It seems like, and I see this in many cases, it's just someone that just never got around to filing for citizenship, and obviously now regrets the fact that he didn't do so. His wife and children are all citizens, right? Yes, his children were born in the United States, and his wife was as well, so they didn't have to take any affirmative steps in order to obtain citizenship. He would have had to apply for naturalization, and he did not do so. Well, he also has a criminal history, though. That may account for why he didn't apply. He could have applied before that as well. As far as the drug case, it may have prevented him from applying. It would have prevented him at least for five years from applying. It may have been a bar to him applying, but before that, he could have potentially applied for citizenship and never did so. So how old was he when he had that first drug offense? I think 26, roughly 26, 27 years old. There's nothing before that? Not that I'm aware of. No arrests, nothing? Not that I'm aware of. And as I stated, the only- Anything after that, before this offense? Again, not that I'm aware of as far as, and there was nothing charged in the notice to appear as far as any additional allegations of removability. So I think that- Right, I'm not asking about grounds for removability. I'm asking about the totality of his criminal history, which may shed some light on why he didn't apply for citizenship if he had a series of arrests, even if he was not charged. Yeah, that, just going back to the pre-sentence report, I don't recall anything that would have been an impediment before 94. Now, after he was convicted in 94 of the drug case, that may well have prevented him from applying for citizenship. It might well be why he didn't, but in any event, he didn't apply for citizenship in this case, and that's where we're at at this point. Okay, well, thank you very much, Mr. Bracken. And you, were you appointed or- No, no. You were retained, okay. And we thank Mr. Holloway as well.